IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON

Assigned on Briefs August 7, 2001

## STATE OF TENNESSEE v. GABRIEL ANTONIO CLARK

**Direct Appeal from the Circuit Court for Madison County**
**No. 99-528     Roy B. Morgan, Jr., Judge**

---

**No. W2000-02595-CCA-R3-CD - Filed September 7, 2001**

---

The Appellant, Gabriel Antonio Clark, was convicted by a Madison County jury for one count of felony murder and one count of aggravated robbery. Clark was sentenced to life imprisonment for the murder conviction and, following a sentencing hearing, received a twelve-year sentence for aggravated robbery. The sentences were ordered to be served consecutively. On appeal, Clark raises the following issues for our review: (1) Whether the evidence presented at trial is sufficient to support his convictions; and (2) whether the trial court erred by failing to exclude or redact a portion of Clark's statement to police which he contends was highly prejudicial and in violation of Tenn. R. Evid. 403. After review, we find no reversible error and affirm the judgment of the trial court.

**Tenn. R. App. P. 3; Judgment of the Circuit Court is Affirmed.**

DAVID G. HAYES, J., delivered the opinion of the court, in which JOE G. RILEY and ALAN E. GLENN, JJ., joined.

Daniel J. Taylor, Jackson, Tennessee, for the Appellant, Gabriel Antonio Clark.

Paul G. Summers, Attorney General and Reporter; Michael Moore, Solicitor General; Laura McMullen Ford, Assistant Attorney General; James G. (Jerry) Woodall, District Attorney General; and Al Earls, Assistant District Attorney General, for the Appellee, State of Tennessee.

## OPINION

### Factual Background

Antonio Womack was employed at Butts Foods, a meat and poultry distributor, in Jackson for approximately two and one-half years. In November of 1998, Womack, who was a forklift operator in the warehouse, was fired for habitually arriving late to work. Two days after his termination, during the early morning hours of November 11, 1998, Womack drove to Kiawauna Wynn's house to socialize, play cards and smoke marijuana with Wynn and the Appellant. While

at Wynn's residence, Womack overheard the Appellant and Wynn discuss plans to commit a robbery. At the same time, Womack mentioned to the two that he needed to retrieve a sweater that he had left at Butts Foods two days earlier.

Sometime later that morning, the Appellant left Wynn's residence, but came back twenty minutes later with "either a nine [millimeter] or a .380" pistol. Wynn was carrying a .357 pistol. At approximately 4:00 a.m., all three men got into Wynn's Nissan and drove to Butts Foods. When they arrived, the three men parked across the street at Floyd's Tavern. Womack knocked on the front glass door while Wynn and the Appellant waited in the car. The victim, Billy Ledbetter, worked as night manager for Butts Foods and unlocked the door for Womack. After Womack retrieved his sweater, the victim walked Womack back to the front door and told him to "have a good night."

According to Womack, the Appellant and Wynn came through the door as the victim was letting him out of the building. Womack stayed outside and shortly thereafter heard numerous gunshots. After hearing the shots, Womack fled a short distance on foot. Wynn and the Appellant later drove by and picked him up. Although Womack's testimony was equivocal as to whether he knew that Butts Foods was going to be robbed that night, he maintained that he accompanied the Appellant and Wynn only to retrieve his sweater and only left with them "because [he] could have been next."

The three men returned to Wynn's house where the money was counted. Approximately $7,187 in cash and $17,122 in checks were taken from the business. Womack testified that Wynn and the Appellant split the cash before the Appellant burned the checks and keys. While dividing the money, the Appellant told Wynn, "Look like you got that m-----r f----r brains on your pants leg." Although Womack initially denied telling Wynn and the Appellant where the money was located, he later admitted at trial that he did, in fact, tell them that the money could be found in a desk. Womack testified that he did not share in the proceeds of the robbery because the Appellant told him "he [didn't] think [he] deserved any money cause [he] didn't do [any]thing." Two days later, when Womack returned to Butts Foods to obtain his paycheck, police arrested him and took him into custody. Womack initially denied any involvement in the crime.

On June 14, 1999, the Appellant was taken into custody on an unrelated charge. When officers indicated that they wanted to talk to the Appellant about the Butts Foods robbery and murder, he stated that he would only speak with Sergeant Leslee Hallenback. At approximately 1:00 p.m., after being *Mirandized* and having signed a waiver of rights form, the Appellant, although agreeing to talk, refused to allow Sergeant Hallenback to record or write any of the conversation down or allow any other officers in the room. In his statement to Sergeant Hallenback, the Appellant related that he, Womack, and Wynn had all discussed the robbery two to three weeks prior to the incident. However, the Appellant stated that he was not aware of Wynn and Womack's plans to commit a robbery at the time he got into the vehicle. The Appellant also stated, "the last time he saw the guns, Womack had them, and that the two guns he [Appellant] was arrested with were not any of the murder weapons." The Appellant further stated, "What if I was the shooter? I'm looking at 51 years." This interview lasted approximately one hour before the Appellant told Sergeant

Hallenback that he needed "some time to think" before continuing the interview. Sergeant Hallenback ceased further questioning and immediately reduced the Appellant's statement to writing outside the presence of the Appellant.

At approximately 6:00 p.m. that same night, Sergeant Hallenback spoke with the Appellant a second time. Again, the Appellant stated that the discussions about robbing Butts Foods began while Womack was still employed there. The Appellant also stated that Womack had explained how they could get inside the building to commit the robbery if he left a sweater and then went back to retrieve it. The Appellant claimed he was not present when the actual robbery occurred, but stated that Womack did have a nine millimeter pistol with him that day.

Roger Harwell, a truck driver for Butts Foods, also testified at trial. Harwell testified that during the early morning hours of November 11th, he recalled seeing three people, all wearing toboggans, in a small dark-colored car parked beside a trailer near Butts Foods. He observed the car leave and come back several times while he was at Butts Foods. He also informed Ledbetter that the car was outside the building. Harwell last saw the car parked at Floyd's Tavern when he left for his route at 4:00 a.m.

Leon Breathette was incarcerated with the Appellant in the Madison County Jail. At trial, he testified that the Appellant told him that he [the Appellant] and two others had been involved in a "warehouse robbery" that "had went bad." Breathette explained that the Appellant told him, "the guy was supposed to have been gone [but] came back unexpectedly, surprised them, and he [the Appellant] shot him."

Dr. O.C. Smith, a forensic pathologist, performed an autopsy on the victim. At trial, Dr. Smith testified that the cause of death was multiple gunshot wounds. He testified that the victim received a total of five gunshot wounds, including one superficial graze and four that penetrated the victim's body. The victim received a gunshot wound to the right forehead, a gunshot wound to the right cheek, and two gunshot wounds to the abdomen. Dr. Smith opined that none of the wounds would have been immediately fatal. The pathologist's testimony indicated that the gunshot wounds to the head and the wounds to the abdomen were produced by two different weapons. The gunshot wounds to the head were consistent with those being produced by a .38/.357 caliber weapon while the wounds to the abdomen were consistent with those being produced by a .380 caliber weapon.[1]

## I. Sufficiency of the Evidence

The Appellant asserts that the evidence presented at trial is insufficient to support his convictions for felony murder and aggravated robbery. He argues that the proof, viewed as a whole,

---

[1] At trial, the parties stipulated that the TBI Crime Laboratory tests established that the "shell casings and bullets recovered from the scene of Butts Foods . . . determined that the casings were from a .380, and one bullet was from a .38/.357 . . . [T]hat a .380 and a .38/.357 are different caliber weapons and could not be fired from the same gun."

fails to support his convictions and further argues that Womack "was not a credible witness based upon the various contradictory statements that he gave regarding his involvement or lack of involvement in this crime."

A jury conviction removes the presumption of innocence with which a defendant is cloaked and replaces it with one of guilt, so that on appeal, a convicted defendant has the burden of demonstrating that the evidence is insufficient. State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982). In determining the sufficiency of the evidence, this court does not reweigh or reevaluate the evidence. State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978). Likewise, it is not the duty of this court to revisit questions of witness credibility on appeal, that function being within the province of the trier of fact. *See generally* State v. Adkins, 786 S.W.2d 642, 646 (Tenn. 1990); State v. Burlison, 868 S.W.2d 713, 718-19 (Tenn. Crim. App. 1993). Instead, the defendant must establish that the evidence presented at trial was so deficient that no reasonable trier of fact could have found the essential elements of the offense beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); State v. Cazes, 875 S.W.2d 253, 259 (Tenn. 1994), *cert. denied*, 513 U.S. 1086, 115 S. Ct. 743 (1995); Tenn. R. App. P. 13(e). Moreover, the State is entitled to the strongest legitimate view of the evidence and all reasonable inferences which may be drawn therefrom. State v. Harris, 839 S.W.2d 54, 75 (Tenn. 1992), *cert denied,* 507 U.S. 954, 113 S. Ct. 1368 (1993).

Jackson v. Virginia addresses two important aspects of a sufficiency review: (1) the manner of review of the convicting evidence; and (2) the standard of review for legal sufficiency. The scope of our examination of the evidence is not equivalent to that of the jury. In a challenge to the sufficiency of the evidence, this court does not retry the defendant. We emphasize that our examination in a sufficiency review is not to revisit inconsistent, contradicting, implausible or non-credible proof, as these issues are resolved solely by the jury. Rather, we look to the record to determine whether there was substantive probative evidence to support the verdict. The second inquiry, the question of legal sufficiency, then follows: whether the record contains evidence from which the jury could have found the essential elements of the crime beyond a reasonable doubt. Every reasonable hypothesis of innocence need not be dispelled; it is only necessary that there exists proof which supports the elements of the crime. Again, we emphasize our inquiry is not upon the weight of the evidence or its inconsistencies but, rather, if there is proof of the crime beyond a reasonable doubt.

In the present case, the Appellant was convicted of felony murder and aggravated robbery. The Appellant was prosecuted for felony murder based upon the allegations in the indictment that the victim was killed "during the perpetration of aggravated robbery in violation of Tenn. Code Ann. § 39-13-202 . . ." Additionally, aggravated robbery is "the intentional or knowing theft of property from the person of another by violence or putting the person in fear . . . accomplished with a deadly weapon or by display of any article used or fashioned to lead the victim to reasonably believe it to be a deadly weapon or where the victim suffers serious bodily injury." Tenn. Code Ann. § 39-13-402(a)(1)(2).

-4-

The proof at trial established that the Appellant admitted to Sergeant Hallenback that he discussed committing the Butts Foods robbery with Womack and Wynn prior to the robbery. The proof additionally established that the Appellant was present during the robbery and murder of Billy Ledbetter. Furthermore, the proof demonstrated that the Appellant was armed with a .380 or nine millimeter weapon, the .380 caliber weapon being a caliber consistent with the wounds sustained by the victim. The Appellant participated in counting the stolen money and sharing in the proceeds. Finally, he admitted to an inmate that he was involved in a warehouse robbery that "had went bad." Clearly from these facts, a jury could have concluded, based upon this conduct or by the conduct of others for which he was criminally responsible or by both, that he was guilty of felony murder and aggravated robbery. Tenn. Code Ann. § 39-11-401.

We acknowledge that Womack's testimony at trial was conflicting and on occasion contradicted his previous statements to police. However, such inconsistencies and questions of credibility were placed before the jury. Questions of credibility of the witnesses are for the jury. See State v. Sheffield, 676 S.W.2d 542, 547 (Tenn.1984); State v. Cabbage, 571 S.W.2d at 835. After reviewing the facts in the light most favorable to the State, we find the evidence presented at trial sufficient to support his convictions for first degree murder and aggravated robbery.

## II. Admission of Appellant's Statement

The Appellant next argues that the trial court erred by admitting into evidence a portion of his statement given to Sergeant Hallenback. At the Appellant's request, Sergeant Hallenback interviewed the Appellant twice on June 14, 1999. Although the Appellant refused to let her record or write anything down during the interview itself, Sergeant Hallenback immediately reduced the Appellant's statements to writing following each interview. On May 22, 2000, the trial court heard the Appellant's motion in limine which sought redaction of the following portion of his statement:

> [The Appellant] told me that the last time he saw the guns, Womack had them, and that the two guns he was arrested with were not any of the murder weapons.

After hearing arguments, the trial court denied the Appellant's motion, ruling the challenged portion was admissible because it was substantive evidence.

The record suggests that the Appellant's arrest at the time that he gave the statement to Sergeant Hallenback was for a charge unrelated to the current offenses.[2] Thus, in this context, the Appellant related to Sergeant Hallenback that "the two guns he was arrested with [on this occasion] were not any of the murder weapons [used in the Butts Foods murder]." Accordingly, the Appellant argues that evidence of this subsequent arrest, implying additional unlawful activity, was highly

___

[2]On this occasion, approximately seven months after the Butts Foods robbery and murder, the Appellant was a passenger in a vehicle in which weapons and cocaine were found.

prejudicial and irrelevant. We agree that this evidence was irrelevant and improperly admitted because the Appellant's possession of these weapons had no connection to the murder or robbery of the victim in this case. Tenn. R. Evid. 401. Nonetheless, we note that prior to the introduction of this portion of the Appellant's statement, trial counsel stipulated to the same facts which he now contends were irrelevant. At trial, the following stipulation was admitted into evidence:

> It is stipulated that the weapons recovered at the time of [the Appellant's] arrest were from the trunk of Joe Bond's car which Joe Bond was driving at the time. These weapons were tested and determined to not be the murder weapon by a Tennessee Bureau of Investigation agent in a report dated November the 10th, 1999.

Trial counsel prefaced this stipulation by stating, "since the Court has overruled me and this evidence is coming in anyway, I've agreed [to the stipulation], without waiving my client's right to appeal this issue . . . I'm not waiving my client's objection." As the trial court correctly charged during jury instructions, "A stipulation is an agreement. The State and the Defendant have stipulated that certain matters of fact are true. They are bound by this agreement, and in your consideration of the evidence, you are to treat those facts as proved." Trial counsel cannot stipulate to a fact and then later argue the facts stipulated to were error. For this reason, we find that any error in its introduction was negated by trial counsel's stipulation, thereby nullifying any harmful effects of the error. Tenn. R. App. P. 36(a). Moreover, while we conclude that the introduction of the portion of the statement objected to was error, we additionally find its admission did not affect the results of the trial and was clearly harmless. Tenn. R. Crim. P. 52(a).

## CONCLUSION

After review, we find the evidence presented at trial sufficient to support the Appellant's convictions for first degree murder and aggravated robbery. Finding no reversible error, we affirm the judgment of the Madison County Circuit Court.

_____
DAVID G. HAYES, JUDGE

-6-